# SULLIVAN v. DISTRICT OF COLUMBIA.

INTOXICATING LIQUORS; BAR-ROOMS.

1. In a prosecution for failing to have a bar-room closed on Sunday, where it appeared that the defendant had divided a room about twelve feet in height by a wooden partition six feet high, in which partition there was a door, and had his bar and liquor in one of the compartments so formed, and the testimony showed that the defendant was seen about one o'clock Sunday morning to go into the compartment where the bar and liquor were and bring therefrom two bottles of beer and a glass of whisky into the other compartment where two men were sitting, it was *held* that a prayer by the defendant that the jury should be instructed to render a verdict for the defendant was properly overruled by the trial court.

2. A prayer for instruction by the defendant in such a case, was also properly refused, which was to the effect that although they should find that the bar-room was not closed on Sunday morning, yet they should acquit unless they should also find that the back room was used for the purpose of making sales therein; the prosecution being not for selling liquor in any part of the bar-room, but for not closing it on Sunday.

3. It was also not error for the trial court to refuse an instruction on behalf of the [defendant in such a prosecution, that if the jury should find that the defendant entered his bar-room at the

time stated and took therefrom beer and carried it into the other room, not for the purpose of making a sale but for the purpose of entertaining his cousin and his bar-tender in his private apartment, their verdict should be for the defendant.

4. Partition of the room, under such circumstances, did not exonerate the defendant from all obligation to close on Sundays the compartment wherein the bar and liquor were not located, the defendant's erection of the partition, in view of the use he made of the contrivance, being a transparent device to defeat the law, and differing only in degree as to its effect from what would have resulted if he had drawn a chalk line across the bar-room and, by word of mouth, or by writing on the floor, had proclaimed that the front part of the room was the only bar-room and the rear part his private apartment; *distinguishing* Hannan v. District of Columbia, 12 App. D. C. 265.

5. In a prosecution for keeping open a bar-room on Sunday, it is unnecessary for the prosecution to show any sale of liquor on Sunday within the bar-room; *following* Lehman v. District of Columbia, 19 App. D. C. 217.

6. An objection to the entire charge of the trial court to the jury is untenable if there appear any proposition in it that is correct; nor is it ground for reversal that there may appear isolated errors in parts of the charge, if they are elsewhere corrected specifically, or, when taken in connection with the rest of the charge, appear to have been cured by its general effect.

No. 1188.  Submitted February 18, 1902.  Decided April 8, 1902.

IN ERROR to the police court of the District of Columbia. *Affirmed.*

The COURT in the opinion stated the case as follows:

This case comes here on a writ of error, to reverse a judgment on the verdict of a jury in the police court of the District, rendered on an information against the appellant Cornelius Sullivan; which charged that the defendant, being the keeper of a licensed bar-room or place where intoxicating liquors are sold, on the 23d of June, 1901, at a place therein described, did fail to have his bar-room or place of business closed on said day, being Sunday, contrary to and in violation of the act of Congress, approved the 3d of March,

1893, entitled "An act regulating the sale of intoxicating liquors in the District of Columbia."

On the 29th of June, 1901, the defendant was arraigned, pleaded not guilty and demanded a jury trial; the jury rendered a verdict of guilty, and he was sentenced by the court.

The facts are embodied in the bill of exceptions, which, after stating that at the trial the defendant admitted in open court that on the Sunday named in the information he was the proprietor of a bar-room situate at No. 613 I st. south west, and had a license therefor under the license act of the 3d of March, 1893,— proceeds to detail the testimony as follows:

" W. E. Rollins, a member of the Metropolitan police force, examined on behalf of the prosecution, testified that he went on duty at twelve o'clock on the night of June 22d, 1901; that defendant's bar-room was on his beat; that in passing around defendant's saloon he heard some loud talking within and he went round to the front, on I St., and looked through the front windows into the bar-room, and also into a private room which adjoins the bar-room; that the two rooms were separated from each other by a wooden partition about six feet in height, which was about one-half the height of the ceiling; that prior to the erection of the partition the two rooms constituted one room; that entrance from one room to the other was by means of a door in the partition; that the bar-room is about twenty-five feet in length, with a door at the south end opening upon I street, and a window at each side of the door; that the bar-counter extends from the front of the room to a point near the partition, and is on the side next the public alley; that the alley runs along the east side of the house, and a door opens from the private room adjoining the bar-room into the alley, near which door there is a hole, about twelve inches square, in the partition, through which he had previously seen women put cans for beer; that he had also previously seen men sitting at tables in the said private room drinking; that on the night in question when he looked through the window he saw be-

yond, through the little hole in the partition, and there saw a man's head; that the defendant then came through the door in the partition, into the bar-room and behind the bar-counter, where he took from an ice-box two bottles of beer, and also poured out a glass of whisky, and carried the beer and glass of whisky into the back room, the door closing behind him; that it was then twenty minutes of one o'clock, on Sunday morning; that officer Auguste was with him, and they then immediately went round to the alley door, where they knocked for admittance; that in half a minute the defendant opened the door, and they found in the back room only the defendant and his bar-tender and another man and two bottles partly full of beer on the table."

Upon cross-examination, the witness Rollins testified that when he entered the room he saw no whisky or whisky bottle or glass, and that he made no inquiry concerning them; that he saw no money; that he never saw parties drinking in the back room adjoining the bar-room pay anything; that the defendant and his wife live in the upper part of the house, and that their kitchen adjoins, at the rear, the room next the bar-room; that the two men he found in the room next the bar-room were Mr. Crowley, the defendant's bar-tender, and Mr. Daniel Keohane, the defendant's cousin, who had been defendant's bar-tender until a few days previously and whom Crowley had succeeded in that capacity; that Keohane, while bar-tender, lived in the house with the defendant and had left only the Thursday or Friday previously; that witness looked around and went out into the alley, a few steps from the door, which was closed behind him, and had a consultation with officer Auguste, and then returned and placed the defendant under arrest and took him to the station-house; that the defendant went with him reluctantly.

Counsel for defendant asked the witness, " What was said and done while you were in there the first time ? " to which the witness replied, " I asked Mr. Sullivan what he was doing in his bar. I asked him if he didn't know it was twenty minutes to one o'clock. He said he got beer for his

friends.   I said it was violation of the law for you to enter
your bar after twelve o'clock.   He said he did not think it
was a violation to get liquor for a friend.   He pleaded ignor-
ance of the law and tried to show me he was not selling any-
thing.   I then went out and consulted with my partner.   I
consulted with him because he had been on the force longer
than I have and is more experienced in such matters."

And thereupon George C. Auguste, another member of
said Metropolitan police force, being produced, sworn, and
examined on behalf of the prosecution, testified to the same
effect as the preceding witness, Rollins, and that the door
between the bar-room and the room referred to, where the
men were seen, was a swing-door like those ordinarily to be
found in bar-rooms, and also testified upon cross-examina-
tion, that the ice-box was right up against the partition.

The prosecution then rested; whereupon the defendant, by
his attorney, stated he did not wish to offer any testimony.
No other or further testimony was given at the trial.

The attorney for the defendant thereupon asked the court
to grant each of three instructions to the jury, which request
was refused; and the court of its own motion gave a charge
to the jury, of some length.

The defendant's attorney then excepted to the court's
charge, and also to every part thereof underscored, upon the
ground that the charge and every part thereof was contrary
to law and to the evidence, and without evidence to sup-
port it, and to each of four particular portions referred to in
the exceptions; all of which were noted by the judge in his
minutes.

And the jury returned to the court and rendered a verdict
of guilty.

*Mr. Lorenzo A. Bailey* for the plaintiff in error.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr.
Edward H. Thomas,* Assistant, for the defendant in error.

Mr. Justice HAGNER, of the Supreme Court of the District of Columbia, who sat with the court in the place of Mr. Chief Justice ALVEY, delivered the opinion:

The first prayer on the part of the defendant that the jury should be instructed upon the evidence to render a verdict for the defendant, was so palpably improper that it may be dismissed without further notice.

The second was to the effect that the jury could not find the defendant guilty, unless they should find the back room was used as part of the bar-room for the purpose of making sales therein;— that is to say, that although they should find the bar-room was not closed on Sunday morning, yet they should acquit unless they should also find the back room was used for the purpose of making sales therein. The information was not for selling liquor in any part of the bar-room, but for disobeying the law by not closing it on Sunday.

The third instruction asked for was that if the jury should find the defendant *entered his bar-room* at the time stated, and took *therefrom* beer and *carried it into the other room,* not for the purpose of making a sale but for the purpose of entertaining his bar-tender and his cousin *in 'his private apartment,* their verdict should be for the defendant.

A vice running throughout this instruction was the assumption that the bar-room (described as twenty-five feet in length) had ceased to be such as a whole by the erection of the partition, so that only the front portion of the apartment thereafter remained a bar-room; while the back portion being no longer part of the bar-room, had become only the *private apartment* of the defendant, as contra-distinguished from the bar-room.

For the court to have granted the instruction with these assumptions, would practically have misled the jury; for while taking from it the power to decide as to the correctness of the assertions of the defendant on this point, it was calculated to induce them to believe the opinion of the judge was that when the defendant left the two guests and went behind the bar-counter to get the whisky and beer, he was then, for

the first time, " *entering* " *the bar-room,*— and that when he walked back through the swing partition door with the liquors, he was in fact carrying them *into another room,* which was " *his private apartment;* " in other words it might well have been considered by the jury as a practical concession of the correctness of the defendant's contention on this point.

But apart from this objection; if the proposition were correct it would result that no sales of liquor to minors at any time, or to adults on Sundays, in " the private apartment," could be punished as being a sale *in the bar-room.* We think the instruction was properly rejected.

The main reliance of the defendant for a reversal of the judgment is that the erection of the partition effectually exonerated him from all obligation to close the rear portion of the room, (which was thenceforth to be known as the " private apartment,") on Sundays; so that even though this " private apartment " may have been open on that morning, the fact should not be imputed as an offense to the keeper of the reduced portion of the room, which had by his act been set apart as the true and only bar-room. It would result that if the defendant had seen fit to construct another partition in front of the bar-counter at the distance of a few feet, with a similar swinging door for access to the counter and a square hole for passing cans for beer, the only portion of the house that could then properly be called a bar-room would be the strip on which the counter stood with the narrow selvage behind and in front of it: and so for the same reason, if he had occupied the entire space thus liberated from the law, with a number of alcoves such as are found in restaurants for the private accommodation of customers, they would all become harbors of refuge for offenders within their limits: and the argument would equally exonerate the remaining strip then constituting the bar-room from liability for whatever might occur in the alcoves. Such a contention could not impose upon persons of ordinary understanding, even if its contriver had himself become convinced of its legality. That it would utterly nullify the provisions of the act requir-

ing the closing of bar-rooms on Sunday, of course is obvious.

As Congress has decided that an effective step towards the discouragement of public drinking on Sundays with its accompanying disorder,—(such as the loud talking within the defendant's place that had attracted the attention of the officers at so early a stage of the symposium)— would be to forbid any bar-room from being kept open throughout the whole day, and has intrusted the efficient enforcement of the law to the courts, it would be mere child's play on their part, to permit such very transparent devices to defeat its execution. For the defendant's erection of the partition, in view of the use he made of the contrivance, differs only in degree as to its effect from what would have resulted if he had drawn a chalk line across the bar-room, and, by word of mouth or by writing on the floor, had proclaimed that the front part of the room was the only bar-room and the rear part was his " private apartment."

But apart from the futility of the pretense that the part of the room where the persons were sitting with the partly emptied beer bottles before them, (though neither the glass of whisky nor any other glass appeared when the police were admitted upon knocking at the side door) was not a part of the bar-room, the evidence sufficiently shows the bar-room,— even if limited to the front part,— was actually open on Sunday morning.

The police were attracted by the light within, and looking through the front windows of the room they saw the defendant come through the swing partition door, go behind the counter, pour out a glass of whisky, and take from an icebox behind the counter two bottles of beer.    Where was the defendant while all this was going on ?    Certainly not with his cousin in the " private apartment."

If there was any place remaining in the entire house, after the defendant had arranged his partition and swing door, that must be admitted to be a bar-room, the defendant certainly was in that particular place on that Sunday morning;

and that place was certainly not closed, while he was procuring the beer and pouring out the liquor behind the counter.

In *Hannan* v. *District of Columbia,* 12 App. D. C. 265, it was decided that the mere opening of a bar-room for the purpose of ingress or egress to or from the other part of the house was not a violation of this statute. But in the course of its opinion the court said: " The bar must be kept closed, and the bar-room,— that is the room devoted to the uses of the bar,— must be kept closed, against all who would resort to such places to obtain liquor on Sunday; and this requirement must be strictly observed and enforced. * * * If, indeed, it had been shown that the door was opened, or any other way provided, by which even a single individual could have procured liquor from the bar on Sunday, the statute would have been violated and the proprietor of the bar would be liable to punishment." And this proposition is cited with approval by the court in *Lehman* v. *District of Columbia,* 19 App. D. C. 217.

This statement by the court as to what acts would certainly amount to a violation of the law, falls far within the degree of proof shown in the present case; which we think fully justifies the verdict of the jury.

It is of course clear there was no necessity to establish any sale of liquor on Sunday within the bar-room, to procure a conviction on this information, if the *bar-room was open* within the meaning of the act, which was the scope of the charge in the case at bar. *Lehman* v. *District of Columbia,* 19 App. D. C. 217.

There only remains to consider the four exceptions to alleged errors in the charge of the judge.

Of course the objection to the *entire charge* is untenable if there appears any proposition in it that was correct. There can be no doubt that such was the case here.

Nor is it ground for reversal that there may appear isolated errors in parts of the charge, if they were elsewhere corrected specifically; or, when taken in connection with the rest of the charge appear to have been cured by its general effect. *Gleason* v. *RR. Co.,* 5 Mackey, 356.

The first exception complains that the charge " states in effect, that the presence of any person in a bar-room on Sunday *for any purpose whatever is unlawful."*

We find no such language in the charge as it appears in the record.    What we do find there implies quite the reverse, viz.: "A bar-room is allowed to be opened for legitimate purposes; for the purpose of seeing to the fires, to the windows, or for any legitimate purpose.  It is not to be entered even by the proprietor for the purpose of serving drinks in a back room, because if it is taken from the bar for this purpose, it is not closed in contemplation of law."

With respect to the alleged errors said to be presented in the three other statements indicated, we observe they involve certain questions of law growing out of the construction of the statute in connection with the facts, which we have already decided against the defendant, and cannot therefore discuss again.

We have examined the charge carefully, and have no difficulty in deciding that it presents a careful, fair, and correct statement of the law in the case; and we see no ground for reversing the judgment below,— and it is accordingly *affirmed, with costs.*